ARNOLDO CASILLAS, ESQ., SBN 158519
LEONEL MOJICA, ESQ. SBN 273732
Casillas & Associates
3777 Long Beach Blvd., Third Floor
Long Beach, CA 90807
Telephone: (562) 203-3030
Facsimile: (323) 725-0350
Email: acasillas@casillaslegal.com

Attorneys for plaintiffs Estate of Juan Luis Olvera Preciado,
by and through successor in interest Silvia Moya Olvera;
Silvia Moya Olvera; Luis Alberto Olvera; Juan Junior
Olvera; Zuleima Olvera; and, Jorge Alberto Olvera, an
incompetent adult, by and through guardian ad litem, Juan
Junior Olvera

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Estate of Juan Luis Olvera Preciado, by and through successor in interest Silvia Moya Olvera; Silvia Moya Olvera; Luis Alberto Olvera; Juan Junior Olvera; Zuleima Olvera; and, Jorge Alberto Olvera, an incompetent adult, by and through guardian ad litem, Juan Junior Olvera,<br><br>      Plaintiffs,<br><br> vs.<br><br>City of Guadalupe, City of Guadalupe Police Department, Miguel Jaimes and DOES 1 to 10,<br><br>      Defendants.<br>_____ | **CASE NO:**<br><br>**COMPLAINT FOR DAMAGES**<br>1. Excessive Force/Substantive Due Process Violation - 42 U.S.C. § 1983<br>2. Municipal Liability for Unconstitutional Customs and Practices - 42 U.S.C. § 1983<br>3. Interference with Familial Integrity - 42 U.S.C. § 1983<br>4. Assault & Battery<br>5. Wrongful Death<br>6. Civil Rights Violations (Cal. Civ. Code § 52.1)<br>7. Negligent Infliction of Emotional Distress<br><br>**DEMAND FOR JURY TRIAL** |

///

1

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Estate of Juan Luis Olvera Preciado, by and through successor in interest Silvia Moya Olvera; Silvia Moya Olvera; Luis Alberto Olvera; Juan Junior Olvera; Zuleima Olvera; and, Jorge Alberto Olvera, an incompetent adult, by and through guardian ad litem, Juan Junior Olvera, (hereafter, collectively "Plaintiffs"), and allege as follows based on information and belief:

## I.

## INTRODUCTION

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the shooting and killing of Juan Luis Olvera Preciado by Miguel Jaimes, an officer with the City of Guadalupe Police Department.  By way of this action, Plaintiffs will establish the violations of fundamental rights under the United States Constitution in connection with the shooting and killing of Juan Luis Olvera.

2.      This action is about the tragic but avoidable death of Juan Luis Olvera Preciado, who was shot and killed as a result of the unjustified use of deadly force by Miguel Jaimes (hereafter, "defendant Jaimes"), a police officer with the City of Guadalupe Police Department.  Defendant Jaimes fired several shots at a motorist that he and other officers had detained, in a residential neighborhood in the City of Guadalupe.  The motorist was not armed nor did the motorist engage in any assaultive or threatening activity or movements.  Despite this, and after ample time to deliberate about the consequences of using deadly force, defendant Jaimes fired several panicked shots at the motorist.  The other officers who were present with defendant Jaimes, and who engaged in the same deliberation, did not fire their guns because there was no reasonable basis to do so and shooting toward an occupied residence and vehicle would be too great a risk of needlessly injuring, or worse yet, fatally wounding others.  Although defendant Jaimes was aware that there were persons in the immediate area at the time, that it was unsafe to fire at the backdrop of family houses that he had at the time he used deadly force, and that his shots would

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

travel downstream toward Juan Luis Olvera, he fired repeatedly at the motorist.  One of those bullets that defendant Jaimes fired travelled toward Juan Luis Olvera Preciado, who was sitting in his SUV in his driveway, waiting for his wife, and struck him in the head.  Juan Luis Olvera Preciado eventually died as a result of the gunshot wound to his head.

3.    The goal of this civil rights action is to demonstrate that the use of deadly force by defendant Jaimes was senseless, careless and unjustified and shocks the conscience, and that his unwarranted use of deadly force was a result of the lack of training by the City of Guadalupe and it's police department.

4.    The loss of Juan Luis Olvera Preciado by his family (wife and children) has caused them unimaginable grief, great pain and suffering and, through this action, Juan Luis Olvera Preciado's family expects to achieve justice for their wrongfully killed husband/father.

## II.
## JURISDICTION AND VENUE

5.    This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourth and Fourteenth Amendments of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

6.    Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, Ventura or Santa Barbara counties, and all incidents, events, and occurrences giving rise to this action occurred in Guadalupe, California.

## III.
## PENDANT CLAIMS

7.    With respect to Plaintiffs' supplemental state claims, Plaintiffs request this Court exercise supplemental jurisdiction over such claims as they arise from the same facts and circumstances which underlie the federal claims.  Plaintiffs have complied with the California Tort Claims Act requirements. With respect to these

supplemental state claims, Plaintiffs request this Court exercise supplemental jurisdiction over such claims as they arise from the same facts and circumstances which underlie the federal claims.

**IV.**

**PARTIES**

8.      Plaintiffs' decedent, Juan Luis Olvera Preciado (hereafter also "Mr. Olvera") was an individual residing in the city of Guadalupe, California, which is in Santa Barbara County.  The claims made by the Estate of Juan Luis Olvera Preciado are brought by the successors in interest to the Estate of Juan Luis Olvera Preciado pursuant to California Code of Civil Procedure § 377.32.

9.      At all times relevant hereto, Plaintiff Silvia Moya Olvera, is and was the lawful wife of decedent Juan Luis Olvera Preciado.

10.      At all times relevant hereto, Plaintiffs Luis Alberto Olvera, Juan Junior Olvera, Jorge Alberto Olvera and Zuleima Olvera are and were the natural adult children of decedent Juan Luis Olvera Preciado and Silvia Moya Olvera, and each of them were residents of Santa Barbara County.

11.      Defendant City of Guadalupe (hereinafter "CITY") is and was, at all relevant times hereto, a public entity, duly organized and existing under and by virtue of the laws of the State of California, with the capacity to sue and be sued. Defendant CITY is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies.

12.      Defendant Guadalupe Police Department (hereinafter "GPD") is a subdivision and department of defendant CITY and employed defendant Jaimes. At all times relevant to the facts alleged herein, defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including GPD employees, complied with the laws and the Constitutions of the United States and of the State of California.

13.     At all times relevant to the facts alleged herein, defendant CITY possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the GPD. At all times relevant to the facts alleged herein, defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including GPD employees and agents, complied with the laws and the Constitutions of the United States and of the State of California.

14.     At all relevant times, defendant Jaimes was a resident of Santa Barbara County and was an employee and agent of defendants CITY and GPD, and with respect to all allegations herein against him, he acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of defendants CITY and the GPD, as well as under the color of the statutes and regulations of the State of California.  He is sued in his individual capacity.

15.     At all relevant times, each of DOES 1 through 10 were employees of the defendant CITY, working as a member of the GPD. At all times relevant herein, each DOE defendant named in the present action, 1 through 10, was an employee and/or agent of defendants City and/or the GPD and they acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of defendants CITY and the GPD, as well as under the color of the statutes and regulations of the State of California.

16.     At all relevant times, each of the Defendants DOES 1 through 10 were acting within his or her capacity as an employee, agent, representative and/or servant of defendants CITY and/or the GPD and is sued in their individual capacities.

17.     The true names of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show the true names and capacities of these Defendants when they have been ascertained.  Each of the

fictitiously named Defendants is responsible in some manner for the conduct and liabilities alleged herein.

18.     Defendants DOES 1 through 10 were officers, sergeants, captains, chiefs and/or policymakers for the CITY and/or the GPD's departments and subdivisions of defendant CITY.  At all times mentioned herein said DOE Defendants were employees, representatives and/or agents of defendants CITY and the GPD.  Said defendants, at all times relevant, were acting in the course and scope of their employment and agency with defendant CITY, which is liable under the doctrine of *respondeat superior* pursuant to California Government Code § 815.2.

19.     Each of the above defendants caused and is responsible for the unlawful conduct and resulting by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so; by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; by promulgating policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiffs' rights, to initiate and maintain adequate supervision and/or training; and, by ratifying the unlawful conduct that occurred by agents and peace officers under their direction and control.  Whenever and wherever reference is made in this Complaint to any act by a Defendant, such allegation and reference shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly and severally. They are sued in their individual and official capacities and in some manner are responsible for the acts and omissions alleged herein.  Plaintiffs will ask leave of this Court to amend this Complaint to allege such name and responsibility when that information is ascertained.  Each of the Defendants is the agent of the other.

## V.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

20.     Juan Luis Olvera Preciado was a 58 year-old Latino male residing in the City of Guadalupe, California with his family. He was a loving husband to his wife,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   Silvia Moya Olvera and his children Luis Arturo Olvera Moya, Juan Junior Olvera

2   Moya, Jorge Alberto Olvera Moya, and Zuleima Olvera Moya.

3       21.   On or about August 21, 2021, at approximately 9:45 PM, Juan Luis

4   Olvera Preciado was lawfully present at his home at 190 Obispo Street, sitting in his

5   SUV in his driveway waiting for his wife to come out to the vehicle so he could take

6   her out to dinner.

7       22.   At the intersection of Obispo Street and Birch Street, a short distance

8   from where Mr. Olvera was sitting in his SUV, defendant Jaimes and a partner officer

9   had stopped and detained a motorist. Defendant Jaimes recognized the motorist and

10  believed that the motorist had an outstanding arrest warrant for not appearing at a

11  court hearing. Defendant Jaimes ran the warrant, and as a result, learned that the

12  crimes underlying the warrant were for identity theft and not for crimes of violence

13  and that the underlying crimes did not involve the use of firearms or other weapons.

14      23.   The motorist was unarmed and, at all times relevant here, complied with

15  orders and instructions made by the police officers that had detained him.

16      24.   After stopping the motorist, and after running the warrant, defendant

17  Jaimes and a partner officer summoned other officers to the location of the traffic

18  stop.  Four, or more, other officers from the GDP arrived to assist defendant Jaimes

19  and his partner.

20      25.   Defendant Jaimes was a relatively junior and inexperienced officer as

21  compared to his partner and the other officers that arrived to assist in the

22  investigation, detention and arrest of the motorist.  He and his partner waited for the

23  other officers to arrive before asking the motorist to exit his vehicle. Because of the

24  pending arrest warrant, defendant Jaimes intended to arrest the motorist and take the

25  motorist into custody.

26      26.   Once the other officers arrived at the location of the vehicle stop, the

27  officers failed to coordinate their efforts in contacting and detaining the suspect. No

28  officer took the lead in contacting the motorist, defendant Jaimes and other officers

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  gave the motorist conflicting commands and orders as to how to exit the vehicle and
2  as to what actions to take once he was out of the vehicle.  Prior to contacting the
3  motorist, the officers did not agree upon a tactical plan for taking the motorist into
4  custody.

5       27.    The motorist was ordered show his hands before he exited the car.  He
6  did so and the officers confirmed that he was unarmed.

7       28.    The motorist was ordered to exit the car.  He did so slowly and stood at
8  the driver side of his car.

9       29.    Defendant Jaimes and the other officers were standing north of the
10  motorist and therefore were looking in a southerly direction at the motorist during
11  their contact with him.

12       30.    Again, the motorist had stopped his vehicle at or near the intersection of
13  Obispo Street and Birch Street (which is a residential neighborhood).  The Olvera
14  family home was at the southeast corner of that intersection.

15       31.    While defendant Jaimes and the other officers stood north of the motorist
16  they had a clear and unobstructed view of the Olvera home, which was south of them,
17  including the home's front yard and the vehicle parked in the home's driveway.

18       32.    Defendant Jaimes and the other officers saw that there were lights on
19  within the Olvera home.  Because of this and because of the cars parked in the
20  driveway and in front to the home, they concluded that there were persons inside of
21  the Olvera home.

22       33.    While the officers made contact with the motorist, Mr. Olvera exited his
23  home and walked out of the front door, across his front yard to his SUV which was
24  parked in his driveway, and entered his vehicle. When he opened the door to the
25  SUV, the dome light and other interior lights illuminated the vehicle.  He turned on
26  the vehicle and the vehicle's exterior lights activated.

27       34.    Defendant Jaimes and the other officers had a clear and unobstructed
28  view of Mr. Olvera and saw him walk to his car and enter his car.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

35.     Because Mr. Olvera's car was directly south of them and the motorist they had detained, Defendant Jaimes and the other officers recognized that Mr. Olvera and anyone in his home would be in direct path of any gunshots that they fired in the direction of the motorist.

36.     Defendant Jaimes and the other officers had ample time to evaluate the danger that was posed by them pointing their guns at an occupied house and vehicle. Based on basic firearm knowledge, they knew that any bullet they fired could pass through the walls of the house and strike persons in the house, and that any such bullet could likewise pass-through vehicle doors and windows and strike any occupant of the vehicle.

37.     By the time the motorist was ordered out of his car, defendant Jaimes and the other officers had drawn their firearms and were pointing them at the motorist in the direction of the Olvera home and the Olvera SUV parked in the driveway.  The officers were standing between 10 and 25 feet from the motorist.

38.     There was ambient light from the patrol cars' headlights, ancillary lights, and spotlights, and from the streetlights in the immediate vicinity, as well as from the lights of the various houses in the immediate vicinity.  This lighting clearly illuminated the motorist, and defendant Jaimes and the other officers were able to clearly see the motorist's movements and actions.

39.      Upon drawing their firearms, the officers and defendant Jaimes sighted their firearms toward the motorist and looked over the barrel of their guns toward the motorist.  As they did so, each of them could see that the occupied Olvera home and Mr. Olvera's vehicle, with him in it, was immediately south of them in the direction that their guns were pointed.

40.     Once the unarmed motorist exited his vehicle, defendant Jaimes and the other officers began calling out orders at the motorist, instructing him to put his hands on his head and while others instructed him to show them his hands and while also others ordered him to get on the ground and others ordered him to get on his knees.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

41.     From the time he exited his car, the motorist moved slowly and deliberately. In complying with these instructions to move to the ground, the unarmed motorist began to slowly move downward to the roadway surface.  He did not move abruptly and did not make any sudden movements.

42.     The other officers that were present observed this and recognized that the motorist was doing what he was instructed generally to do, i.e., move to the ground slowly.  The motorist's compliant and slow movements served to de-escalate the situation.

43.     As the unarmed motorist moved slowly to the ground, however, defendant Jaimes intentionally, without cause, fired his gun at the motorist, shooting at him repeatedly.  The motorist was unarmed, and he had made no sudden or abrupt movements as he was moving slowly toward the ground.  There was no reason to shoot at the motorist.

44.     Before and as he shot at the unarmed motorist, defendant Jaimes could see that his gun was pointing in the direction of the Olvera home and at the vehicle parked in the driveway.  Defendant Jaimes knew that the home and vehicle were occupied.  He understood that any shot that was fired in the direction of the Olvera home and occupied vehicle could cause death or serious bodily injury to the occupants of the house and car.  Despite this, he fired four to six gunshots knowing that he was aiming in the direction of, and firing at, an occupied house and vehicle.

45.     Despite his close proximity to the unarmed motorist, none of the gunshots fired by defendant Jaimes struck the motorist.  Instead, the bullets defendant Jaimes fired travelled toward the Olvera home and the Olvera SUV.  Most of the bullets struck the Olvera home and the ground in the front yard.  One of the bullets travelled over and across the front yard toward the SUV that was parked in the driveway.  This bullet struck Mr. Olvera in the head as he sat in his SUV.

46.     None of the other officers fired their weapons.  Like defendant Jaimes, each of the officers understood that any shot that was fired in the direction of the

Olvera home and occupied vehicle could cause death or serious bodily injury to the occupants of the house and car.  As defendant Jaimes deliberated, aimed and fired his weapon, each of the other officers also deliberated whether to shoot or not. They each determined that the motorist's movements posed no risk or danger to them or others, and that shooting in the direction of the motorist posed a serious risk to others in the occupied house and vehicle south of them.  Because there was no reason to shoot and because it was dangerous to do so, considering the backdrop, none of the other officers fired their weapons.

47.     From the time that defendant Jaimes and the other officers drew their firearms before ordering the motorist out of his car, and until the time that defendant Jaimes discharged his firearm, five to ten minutes elapsed.  As such, before he fired his weapon, defendant Jaimes had ample time to observe the circumstances and to assess any dangers or threats that might have existed.  None did exist.  Further, the events preceding the shooting happened in a controlled and orderly fashion.  The circumstances were not life-threatening. The unarmed motorist had moved slowly and deliberately in a compliant response to the officers' instructions, allowing defendant Jaimes to meaningfully and cautiously evaluate the circumstances that were present before and during the shooting.  There was no reason for defendant Jaimes firing his gun at the motorist that night.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

# VI.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Violation of Substantive Due Process Rights

### Excessive Force – Fourteenth Amendment

### 42 U.S.C. § 1983

### As Against Defendant Miguel Jaimes

48.    Plaintiff Estate of Juan Luis Olvera Preciado, realleges and incorporates the foregoing paragraphs as if set forth herein.

49.    The actions of defendant Jaimes in the shooting and killing of Juan Luis Olvera Preciado, as described herein, violated his substantive due process rights under the Fourteenth Amendment to be free from excessive force that shocks the conscience.  Under the totality of the relevant circumstances that existed, Juan Luis Olvera Preciado posed no danger or threat to defendant Jaimes, or anyone else. Likewise, the motorist that defendant Jaimes had detained posed no threat or danger. Under the circumstances, defendant Jaimes acted unreasonable in discharging his gun at the motorist or at Mr. Olvera and under the same circumstances.

50.    Defendant Jaimes had ample opportunity to evaluate the circumstances as they existed before he fired his weapon. As described above, the incident developed slowly and over a significant amount of time.  The motorist was compliant, and he moved slowly, he was unarmed, and the circumstances were deescalating as a result.  The other officers who were standing with and next to defendant Jaimes did not fire their guns.  Defendant Jaimes cautiously deliberated about the use of force and was aware that the backdrop he was aiming at included an occupied house and vehicle.  He was aware that both the house and SUV contained persons and that if he fired in that direction, he would be putting their lives at risk. Despite knowing this, and despite having observed that the motorist was moving slowly to the ground in compliance with the orders that he and the other officers

issued to him, defendant Jaimes nonetheless fired four to six bullets in the direction of the house and SUV.  When defendant Jaimes fired his gun, the motorist was not in his gunsights.  Instead, the gun was pointed at the Olvera house, front yard and SUV. Defendant Jaimes nonetheless discharged his weapon.  None of the bullets struck the motorist who was a short distance from defendant Jaimes.  Instead, the bullets travelled where Jaimes was aiming; that is, toward the occupied house and SUV with Mr. Olvera in it.

51.     As described above, the use of deadly force by defendant Jaimes was unwarranted and unjustified under the circumstances and constituted as an unreasonable use of force against the motorist.  He had ample time to deliberate as to the propriety of using deadly force.  He did so, and consciously chose to fire his gun at the house and SUV despite there being no justification for that use of force. Defendant Jaimes' use of force under these circumstances by firing his gun at the house and SUV shocks the conscience.  The use of force, under these circumstances was an example of deliberate indifference to the lives and safety of the occupants of the house and SUV and an example of the resulting harm unrelated to legitimate law enforcement objectives, all in violation of the Fourteenth Amendment's guarantees of substantive due process.

52.     The conduct of Defendant Jaimes violated clearly established constitutional or other rights, of which Defendant Jaimes knew, or of which reasonable public officials such as defendant Jaimes should have known, rendering this defendant liable to Plaintiff under 42 U.S.C. § 1983.

53.     After being shot, Mr. Olvera endured great physical and emotional pain and suffering, and eventually died.

54.     The shooting deputy, defendant Jaimes, is liable to Plaintiff Estate of Juan Luis Olvera Preciado for compensatory damages pursuant to 42 U.S.C. § 1983, including pre-death pain and suffering.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

55.     The unreasonable and unwarranted shooting and killing of Juan Luis Olvera Preciado was willful and done with a deliberate disregard for the rights and safety of Juan Luis Olvera Preciado, and therefore warrants the imposition of punitive damages as to defendant Jaimes.

## SECOND CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional Customs and Practices**

**42 U.S.C. § 1983**

**As Against Defendants City of Guadalupe and**

**City of Guadalupe Police Department**

56.     Plaintiff Estate of Juan Luis Olvera Preciado, realleges and incorporates the foregoing paragraphs as if set forth herein.

57.     On and before August 21, 2021, and prior to the shooting of Juan Luis Olvera Preciado, defendants City of Guadalupe and the City of Guadalupe Police Department were aware their police officers were engaging in the practice of using excessive and unreasonable force, including deadly force.

58.     Said defendants, acting with deliberate indifference to the rights and liberties of the public in general, and of Juan Luis Olvera Preciado, knowingly maintained, enforced and applied customs and practices of:

a.     Encouraging, accommodating, or ratifying the shooting of residents of the City of Guadalupe;

b.     Encouraging, accommodating, or ratifying the use of excessive and unreasonable force, including deadly force;

c.     Encouraging, accommodating, or facilitating a "code of silence" among officers/supervisors, pursuant to which false reports were generated and excessive and unreasonable force was covered up;

d.     Employing and retraining, as police officers and other personnel, including individuals such as defendant Jaimes, who said Defendants

knew or reasonably should have known had dangerous propensities for abusing his authority and for mistreating members of the public;

e.   Inadequately supervising, training, and disciplining their police officers, including defendant Jaimes, who said Defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

f.   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by officers;

g.   Assigning police officers with known histories of misconduct, including criminal conduct, in accord with GPD custom of assigning these police officers to come into contact with members of the public;

h.   Ratifying wrongful conduct by police officers and supervisors which result in serious injuries and death to members of the public, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct;

i.   Failing to discipline, investigate and take corrective actions against GPD police officers for misconduct, including, but not limited to, unlawful detention, excessive force and false reports;

j.   Failing to create a "paper trail" of Officer misconduct by systemically rejecting citizen complaints at the early stages of an internal affairs or department investigation;

k.   Maintaining vague, ambiguous, and biased records that do not properly, adequately, or accurately apprise others of the officers' past misconduct;

l.   Failing to internally investigate any cases that are pending litigation which usually relate to the most serious forms of officer misconduct;

m.   Failing to adequately retrain, discipline, suspend, or terminate problem officers within the department; and,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

n.     Allowing Officers to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence," or "blue code," regarding these unconstitutional abuses in order to protect members, recruit younger officers and earn promotions.

59.     By reason of the aforementioned customs and practices, Juan Luis Olvera Preciado was severely injured and subjected to pain and suffering as alleged above in the First Claim for Relief.

60.     Plaintiff is informed and believes and thereon allege that at the time of the incident alleged above and long prior thereto, defendants CITY and the GPD, knew or should have known that defendant Jaimes, is and was prone to use unreasonable or deadly force, and failed to properly train, instruct, supervise, investigate, regulate or discipline him. These failures and the aforementioned practices, policies and customs were and are the proximate cause of the injuries and death to Plaintiffs' decedent, Juan Luis Olvera Preciado.

61.     Plaintiff is informed and believes and thereon alleges that defendant Jaimes had a history and propensity for acts of the nature complained of herein and manifested such propensity prior to and during his employment and/or agency with defendant CITY and the GPD.  Plaintiff is further informed and believes and thereon alleges that defendants CITY and the GPD knew, or in the exercise of reasonable care should have known, of such prior history and propensity at the time such individual was hired and/or during the time of his employment.  These Defendants' disregard of this knowledge and/or failure to adequately investigate and discover and correct such facts caused the violation of Plaintiff's constitutional rights.

62.     The policies, practices, and customs implemented and maintained and still tolerated by defendants CITY and the GPD were affirmatively linked to and were a significantly influential force behind the death of Juan Luis Olvera Preciado.

63.     By reason of the aforementioned acts and omissions, Juan Luis Olvera Preciado was shot and killed by defendant Jaimes.

16
**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

64.     Accordingly, defendants CITY and the GPD are liable to Plaintiff for compensatory damages pursuant to 42 U.S.C. § 1983.

### THIRD CLAIM FOR RELIEF

**Interference with Familial Integrity**

**Substantive Due Process Violation**

**42 U.S.C. § 1983**

**As Against Defendants City of Guadalupe and City of Guadalupe Police Department, Miguel Jaimes and DOES 1 through 10**

65.     Plaintiffs Silvia Moya Olvera, Luis Alberto Olvera, Juan Junior Olvera, Zuleima Olvera, and, Jorge Alberto Olvera reallege and incorporate the foregoing paragraphs and allegations against all Defendants herein as if set forth herein.

66.     The present claim is brought pursuant to 42 U.S.C. **§** 1983, for violation of the right of familial integrity guaranteed by the Fourteenth Amendment of the United States Constitution.

67.     As alleged above, the shooting and killing of Juan Luis Olvera Preciado was unreasonable under the circumstances of the encounter between Juan Luis Olvera Preciado and defendant Jaimes.  As such, the shooting and killing of Juan Luis Olvera Preciado violated the constitutional limits on police use of deadly force in violation of the Fourteenth Amendment's substantive due process limits on police conduct.

68.     At the same time, the shooting and killing of Juan Luis Olvera Preciado violated the rights of Plaintiffs Silvia Moya Olvera, Luis Alberto Olvera, Juan Junior Olvera, Zuleima Olvera, and, Jorge Alberto Olvera to be free from police interference in their relationship with Juan Luis Olvera Preciado.

69.     The conduct of defendant Jaimes shocks the conscience and was the direct and proximate cause of the death of Juan Luis Olvera. As a result of this conduct of defendant Jaimes, Plaintiffs lost Juan Luis Olvera Preciado, as well as his love, affection, society, and financial and moral support.

70.     As a result, defendants Jaimes, CITY, the GPD and DOES 1 through 10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

71.     The unreasonable conduct of defendant Jaimes was willful and done with a deliberate disregard for the rights and safety of Juan Luis Olvera Preciado and the present Plaintiffs and, therefore, warrants the imposition of punitive damages as to defendant Jaimes.

## FOURTH CLAIM FOR RELIEF

### Battery

### As Against Defendants City of Guadalupe and Miguel Jaimes

72.     Plaintiff Estate of Juan Luis Olvera Preciado, by and through Juan Luis Olvera Preciado's successors in interest, reallege and incorporate the foregoing paragraphs as if set forth herein.

73.     This cause of action arises under the general laws, statutes and Constitution of the State of California.  Plaintiffs have complied with the California Tort Claims Act requirements.

74.     Defendant Jaimes discharged his firearm at a motorist without cause or provocation.  The use of deadly force against the motorist, under the circumstances, was unreasonable.

75.     Through the doctrine of transferred intent, the unreasonable use of force which was applied against the motorist by defendant Jaimes was transferred to Juan Luis Olvera Preciado.

76.     Accordingly, defendant Jaimes battered Juan Luis Olvera Preciado, as pleaded herein above, when said defendant Jaimes acted intentionally to cause, and did cause, a non-consensual, unprivileged, unjustified, excessive, harmful or offensive contact to the person of Juan Luis Olvera Preciado by unreasonably and unjustifiably discharging his firearm repeatedly at an unarmed motorist.

77.     These acts were undertaken by defendant Jaimes intentionally and without justification.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

78.     As a result of these deliberate and unjustified acts undertaken by said defendant, Juan Luis Olvera Preciado endured great physical and emotional pain and suffering, and, after an extended period, died.

79.     These deliberate and unjustified acts undertaken by defendant Jaimes was willful and done with a deliberate disregard for the rights and safety of decedent Juan Luis Olvera Preciado and, therefore, warrant the imposition of exemplary and punitive damages against him.

80.     Defendant CITY is liable to Plaintiffs for the acts of their public employees, defendant Jaimes and Does 1 through 10, for conduct and/or omissions herein alleged, pursuant to the doctrine of *respondeat superior*, codified at California Government Code § 815.2.

## FIFTH CLAIM FOR RELIEF

### Wrongful Death

### As Against Defendants City of Guadalupe,

### Miguel Jaimes and DOES 1 through 10

81.     Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

82.     This cause of action arises under the general laws and Constitution of the State of California.  Plaintiffs have complied with the California Tort Claims Act requirements.

83.     Defendant Jaimes, while working as police officer of the GPD, and acting within the course and scope of his duties, employed negligent tactics and intentionally and/or without due care shot Juan Luis Olvera Preciado.  As a result of these intentional acts and negligence, Juan Luis Olvera Preciado suffered serious injuries and lost his life.  Defendant Jaimes had no legal or reasonable justification for his actions.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

84.   Upon contacting the motorist, he was ordered to display his hands, to exit the vehicle, to turn away from the officers and place his hands on his head.  He did so.  Once out of his car, he was ordered to move to the ground by officers while other officers gave him conflicting instructions about what actions to take.  While the motorist was responding to the conflicting commands and orders from defendant Jaimes and the other officers, he bent at the waist to move to the ground as one of the officers, DOE 1 through 10, instructed him to get on his knees, at which time, the shooting occurred.

85.   These tactics and decisions included, but are not limited to, the issuance of inconsistent orders to the motorist by various GPD officers, the officers' failure to follow their training as to vehicle stops, improperly approaching the motorist before it was safe to do so, positioning themselves in positions of danger, improperly positioning the motorist for detention, failing to order the motorist to lay prone on the ground, and approaching and contacting the motorist before it was safe to do so.

86.   Additionally, before discharging his weapon, defendant Jaimes recklessly failed to take into account the backdrop that he was shooting at, i.e., at an occupied family residence and vehicle where he knew or should have known that persons would be present.

87.   During the encounter with the motorist, and because of their negligent decisions and tactics of the GPD officers present, defendant Jaimes fired several gunshots at the motorist even after the motorist fell to the ground.  The motorist had not engaged in any assaultive or threatening behavior, had complied with all orders and commands made by the officers, and was unarmed.

88.   Before the shooting, the motorist had made no threatening statements or movements, was not resisting arrest or detention and was not engaged any conduct which posed or suggested that he posed a threat of death or serious bodily injury to the GPD officers or other persons.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

89.     Defendant Jaimes' discharge of his firearm was reckless, wrongful, negligent and improper under the circumstances as confirmed by the other officers who were present with him during the stop and detention of the motorist, who all witnessed the conduct, movements and statements of the motorist and did not discharge their firearms at the motorist.  Likewise, the random pattern of the gunshot strikes of the bullets fired by defendant Jaimes indicates that his shooting was uncontrolled and panicked.

90.     All of the gunshots were fired in the direction of an occupied family residence.  Before the shooting, Mr. Olvera had exited his home and walked across his lawn while the officers were present on the street in front of his house.  He was in direct view of the officers who were contacting the motorist in the street. Before he discharged his firearm, defendant Jaimes was, or should have been, aware that Juan Luis Olvera Preciado was present in his vehicle.  Mr. Olvera was in a direct line of sight defendant Jaimes at the time of the shooting.

91.     Before discharging his firearm, defendant Jaimes failed to take into account the backdrop that he was shooting at.  Despite knowing that the backdrop consisted of an occupied house and a person sitting in his vehicle, defendant Jaimes nonetheless discharged his firearm in a panicked and uncontrolled fashion.

92.     One of the gunshots fired by defendant Jaimes traveled in the direction of the Olvera residence and vehicle and struck Mr. Olvera in the head as he sat in his vehicle in his driveway

93.     Mr. Olvera suffered serious injuries to his head from which he eventually died.

94.     Said shooting was without provocation, cause or necessity as the motorist and Mr. Olvera did not pose a threat or present a danger of any nature to anyone.  Accordingly, defendant Jaimes' discharging of his weapon at the motorist was unjustified, wrongful, reckless and negligent, and this use of force was unwarranted and excessive under the circumstances.  Further, under the

circumstances of the shooting in question, it was objectively unreasonable for defendant Jaimes to have used such deadly force and said use of force was, therefore, excessive and unreasonable.  Defendant Jaimes wrongfully, recklessly and negligently intended to shoot and kill the motorist.  Defendant Jaimes' unjustified, wrongful, reckless and negligent conduct and intent was transferred to Juan Luis Olvera Preciado, and this shooting was unreasonable and unjustified under the circumstances and constituted a battery as well as a negligent shooting.  The shooting also constituted a violation of Juan Luis Olvera Preciado's constitutional rights under the Fourteenth Amendment to the United States Constitution and also violated those civil rights secured by the Constitution and statutes of the State of California (Bane Act).

95.    Further, Defendant Jaimes and other presently unknown police officers of the GPD who were present at the scene of the shooting and killing of Juan Luis Olvera Preciado and who were in a location and in the position of authority to prevent the shooting by intervening to stop defendant Jaimes from using deadly force, failed to do so.  Said failure was in conscious and deliberate disregard for the civil rights of the motorist and, therefore, of Juan Luis Olvera Preciado and for the fatal injuries which Juan Luis Olvera Preciado would likely, and did, suffer as a result of the shooting.

96.    The shooting and resultant killing of Juan Luis Olvera Preciado, as well as the other acts and omissions enumerated above, were done as a result of, or pursuant to, the unconstitutional policies, practices, customs, and procedures in place at the defendant GPD and sanctioned, authorized and ratified by said department and defendant CITY, and those other captains, lieutenants, supervisors, persons, officials and police officers of the defendants CITY and the GPD who have policy-making authority.

97.    Additionally, the shooting of Juan Luis Olvera Preciado by defendant Jaimes of the GPD was a result of the failure of the GPD to adequately and

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

sufficiently train defendant Jaimes and the other officers who were present for the fatal shooting of Juan Luis Olvera Preciado as to proper police practices and tactics for the management and control of motorists as well as the proper and safe use of firearms.

98.     The GPD and CITY also negligently hired and retained defendant Jaimes and those who participated in the investigation of said shooting, when it was known, or should have been known, by said Department and City that these police officers had on prior occasions used excessive force and/or had participated in the concealment and cover-up of police misconduct.

99.     As a direct and proximate result of the conduct of defendant Jaimes, Juan Luis Olvera Preciado lost his life.  Plaintiffs have been deprived of the life-long love, affection, comfort, support and society of Juan Luis Olvera Preciado, and will continue to be so deprived for the remainder of their natural lives.

100.   Plaintiffs were further caused to pay funeral and burial expenses as a result of the conduct of defendant Jaimes.

101.   Defendant CITY is vicariously liable for the wrongful, intentional and/or negligent acts of defendant Jaimes, pursuant to California Government Code § 815.2, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

## SIXTH CLAIM FOR RELIEF

### Civil Rights Violations (Cal. Civ. Code § 52.1)

### As Against Defendants City of Guadalupe and Miguel Jaimes

102.   Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

///

///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

103.   This cause of action arises under the general laws and Constitution of the State of California, including California Civil Code § 52.1 and California Government Code §§820 and 815.2.  Plaintiffs complied with the California Tort Claims Act requirements.

104.   As a result of the conduct of defendants Jaimes and DOES 1 through 10 by the use of threats, intimidation, and coercions, interfered with Plaintiffs' exercise and enjoyment of the rights secured by the United States Constitution and other Federal laws, the Constitution and laws of the State of California, and their rights under California Civil Code § 52.1.

105.   All of the above acts and omissions of defendant Jaimes were wilful, wanton, malicious and oppressive, thereby justifying the awarding of exemplary and punitive damages as to her.

106.   Defendants, and each of them, for the respective acts and violations pleaded herein above, are liable to Plaintiffs for damages, penalties and attorneys' fees as provided in California Civil Code § 52.1.

## SEVENTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

### As Against Defendants City of Guadalupe and Miguel Jaimes

107.   Plaintiff, Silvia Moya Olvera (hereafter, "Plaintiff Olvera"), realleges and incorporates the foregoing paragraphs as if set forth herein.

108.   Plaintiff Olvera is and was at all times herein mentioned, the lawful wife of decedent Juan Luis Olvera Preciado.

109.   Plaintiff Olvera was present at the scene of the shooting of Juan Luis Olvera Preciado by defendant Jaimes, and was aware at the time of the shooting, that the shooting had caused injury to decedent Juan Luis Olvera Preciado.

110.   As a result of the facts described herein, Plaintiff Olvera suffered distress beyond that which would be anticipated in a disinterested witness.  As a

1  result thereof, said Plaintiff Olvera has suffered general damages. The amount of
2  general damages is not specified, pursuant to law.

3        111. As a further proximate result of the acts and omissions of said
4  Defendants, Plaintiff Olvera has incurred losses and damages. Said Plaintiff has also
5  suffered from loss of consortium. The full amount of these expenses, losses and
6  damages is not known to said Plaintiff at this time.

7        112. Defendant CITY is vicariously liable for the wrongful, intentional and/or
8  negligent acts of defendant Jaimes, pursuant to California Government Code § 815.2,
9  which provides that a public entity is liable for the injuries caused by its employees
10  within the scope of the employment if the employee's act would subject him or her to
11  liability.

12  **VII.**

13  **PRAYER FOR RELIEF**

14        WHEREFORE, Plaintiffs requests entry of judgment in their favor and against
15  Defendants as follows:

16        A.      For compensatory damages, including pre-death pain and suffering
17  damages, general damages and special damages, and statutory damages for violation
18  of the laws and Constitution of the United States and State of California, in an
19  amount to be determined at trial;

20        B.      For punitive damages against defendants Jaimes and DOES 1
21  through 10 pursuant to 42 U.S.C. § 1983, and any other applicable laws or statutes, in
22  an amount sufficient to deter and make an example of each of them;

23        C.      For prejudgment interest to be determined at trial;

24        D.      For reasonable costs of this suit and attorneys' fees, including
25  attorneys' fees pursuant to 42 U.S.C. § 1988; and

26  ///
27  ///
28

E.      For such further other relief as the Court may deem just, proper, and appropriate.


Dated:  February 8, 2022                    CASILLAS & ASSOCIATES


By:  _/s/ Arnoldo Casillas_
ARNOLDO CASILLAS
LEONEL MOJICA
Attorneys for Plaintiffs, Estate of Juan Luis
Olvera Preciado, by and through successor in
interest Silvia Moya Olvera; Silvia Moya
Olvera; Luis Alberto Olvera; Juan Junior
Olvera; Jorge Alberto Olvera, Zuleima Olvera

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

# DEMAND FOR JURY TRIAL

Plaintiffs Estate of Juan Luis Olvera Preciado, Silvia Moya Olvera, Luis Alberto Olvera, Juan Junior Olvera, Jorge Alberto Olvera, and Zuleima Olvera and hereby demand trial by jury.


Dated: February 8, 2022                    CASILLAS & ASSOCIATES

                                           By:  _/s/ Arnoldo Casillas_
                                           ARNOLDO CASILLAS
                                           LEONEL MOJICA
                                           Attorneys for Plaintiffs, Estate of Juan Luis
                                           Olvera Preciado, by and through successor in
                                           interest Silvia Moya Olvera; Silvia Moya
                                           Olvera; Luis Alberto Olvera; Juan Junior
                                           Olvera; Jorge Alberto Olvera, Zuleima Olvera